Argued January 3; reversed January 17; rehearing denied
February 21; opinion amplified April 11, 1933

# CARTER ᴇᴛ ᴀʟ. *v.* LaDEE LOGGING CO.

(18 P. (2d) 234, 20 P. (2d) 1086)

*W. C. Bristol,* of Portland (Bristol & Cole, James Cole, and William L. Gosslin, all of Portland, on the brief), for appellants.

*Charles A. Hart,* of Portland (Carey, Hart, Spencer & McCulloch, of Portland, on the brief), for respondent.

BAILEY, J. It is contended by the defendant that the judgment in the federal court case in favor of the Union Lumber Company, Ltd., the owner of the timber land, and against the plaintiffs in that case, is a bar, either as a former adjudication of the issues herein involved or as an estoppel, on the ground of public policy, to the maintenance of this action against the LaDee Logging Company, since the plaintiffs in both cases are the same and the issues involved in both cases substantially identical. On the other hand, the plaintiffs contend that the issues and parties in the two cases are not the same and therefore there can be no estoppel, and that the matters involved are not *res judicata.*

In this case the defendant, LaDee Logging Company, is alleged to have conducted its logging operations on certain lands in Clackamas county "with camps and logging equipment comprising cables, donkey engines, locomotives, railroads and the usual appurtenances of such business * * * and had been maintaining and conducting such business there and in the vicinity adjacent for some long time prior to and during the month of September, 1929"; and it is charged with the following acts of negligence:

"The defendant in its logging operations aforesaid did not clean up the brush, slash, debris, downfall and inflammable materials arising out of and connected with its logging operations and allowed the same to accumulate, and did not keep clean and remove from its operated logging railroad right-of-way accumulations of inflammable material, and also tinder, refuse and extra dried vegetation likely to be the cause of or become set on fire, but allowed the same to accumulate on and near the ties and rails of its said railroad so that fire might be communicated thereto, all during the summer of 1929 and prior thereto without any act

or thing being done to lessen or remove the menace and danger of fire from its said logging operations, and as the summer heat and dryness advanced into the month of September, 1929, there was caused thereby and became a period of exceptional fire emergency and extra hazardous climatic conditions for any logging operations whatever, in the whole area of townships three (3) and four (4) south of ranges five (5) and six (6) east of the Willamette Meridian; and defendant persisted without any precaution and any care to conduct and did so conduct its operations, notwithstanding it was notified September third, 1929, to cease the same on account among other things of dangerous humidity and weather conditions, and the excessively dry and highly inflammable nature of the vicinity of its operations, all of which defendant well knew and saw and was readily to be then known and seen without any notice especially in the vicinity of the southeast quarter of the southeast quarter (SE¼ SE¼) of section twenty-five (25), township four (4) south of range five (5) east of the Willamette Meridian, and these conditions were then known and had been known to defendant, and defendant knew all of the same, for it was as early as June, 1929, or thereabouts duly notified by the authorities both federal and state of its failure to take precautionary measures of and about its brush, slashing, debris and inflammable materials and to remove and prevent the danger and spread of fire, but defendant disregarded said conditions, notice and knowledge and wholly and wilfully failed, neglected and refused to do anything to prevent the starting of fires or the spread and continuation thereof after fire did start; and on or about the time between September first and September fifteenth, 1929, in the vicinity aforesaid and under the knowledge, notice and conditions aforesaid, and notwithstanding the increasing and continued humidity, dryness, heat and wind, all of which the officers, agents, employes and operators of defendant then knew and were informed about and wholly without any precautions to prevent spread

of fire wilfully and without doing anything to control or extinguish the same started and set and caused to be started and set fires upon said lands that spread and escaped without controlling or without extinguishing them, and suffered and permitted such fires to increase and augment and to burn into or through forests, woods, timber, brush, slashing, cutover land and clearing and thereby defendant destroyed the aforesaid properties and belongings of these plaintiffs''.

It is further alleged that the fire complained about occurred through the wilfulness and negligence of the defendant and by the defendant ''deliberately augmenting and not preventing said fires and the spread thereof''.

The amended complaint in the federal court case alleged that the defendant Union Lumber Company, Ltd., was the owner of certain lands in Clackamas county, being the same lands described in the complaint in the state court case, and that the ''LaDee Logging Company is its operating agent as loggers with camps and logging equipment comprising cables, donkey engines, locomotives, railroads and the usual appurtenances of such business as is usually conducted, to operate'' in that particular district ''and was so allowed and permitted to operate by Union Lumber Company, Ltd., on its lands, to fell and log its timber, and was so doing and engaged for defendant at the time of the events herein complained about, the defendant being the owner of lands on and over which the aforesaid described operations were then being conducted during the month of September, 1929''. The defendant in that case was also charged with certain acts of negligence, in the following language:

''Paragraph 8. Defendant allowed, suffered and permitted on its said forest and timber lands in the

county of Clackamas and state of Oregon, and in township four (4) south of ranges five (5) and six (6) east of Willamette Meridian, slashing, brush, debris and inflammable materials to accumulate on its said land and remain thereon a constant fire menace and danger without protection and removal in September, 1929; also, forest fires to start and to escape and did not extinguish the same, and to come together and reach its log 'cold deck'; also allowed fires to escape uncontrolled and develop and increase with indescribable fury until there was enveloped several thousand acres; also fires to increase and advance on its own property without protection or prevention by it; also fires to be caused, set out and spread beyond control; also, fires to burn into or through woods, forest, timber, brush, slashing, cutover land and clearing, and into and through the same into the properties of the plaintiffs, R. Thomas Carter and Alice E. Carter, and did not furnish or provide adequate protection against the starting or spread or escape of said fires on its lands in the month of September, 1929, in Clackamas county, Oregon; and it was these acts of the defendant that caused, suffered and permitted the destruction of the property of the plaintiffs, R. Thomas Carter and Alice E. Carter, as described aforesaid.

"Paragraph 9. That there was excessive humidity, dryness and heat in the month of September, 1929, well known to everybody and especially the defendant, and all parts of the woods and forest in the vicinity described were in a highly inflammable condition that rendered conditions of operations and conduct of logging of critical emergency for fire during that month, all of which the defendant well knew and was informed about, and was notified to cease timber and logging operations because thereof, but defendant disregarded said knowledge and information and persisted in and continued its timber and logging operations in the month of September, 1929, and defendant then knew that fire started and existed on its property September eleventh, 1929, but did not prevent its escape, in-

crease and spread and did not extinguish or control said fires, and caused the origin of said fires on said day on its land during its said operations and allowed them to escape and to spread, thereby destroying the property of the plaintiffs, R. Thomas Carter and Alice E. Carter.

"Paragraph 10. That defendant carelessly, wilfully and deliberately without permits set out fires and did not extinguish the same, and fires occurred and escaped by its acts hereinbefore alleged, thereby destroying plaintiff's property on the fifteenth day of the month of September, 1929, in Clackamas county, Oregon".

In its answer in the federal court case the Union Lumber Company, Ltd., admitted that it was the owner of the land described in the complaint and that the LaDee Logging Company was allowed to operate and to log timber on its lands, "but only as an independent contractor". It further alleged that immediately upon the outbreak of the fire the LaDee Logging Company promptly and efficiently proceeded to fight the fire and was making progress in its control and extinguishment and would have had the fire under control and extinguished had it not been for the acts of a certain forest officer and ranger.

At the trial in the federal court case a certified copy of the complaint filed in the state case was introduced in evidence by the defendant and in referring thereto the court charged the jury as follows:

"There has been received in evidence as defendant's exhibit 'S' a certified copy of a complaint filed in the circuit court of the state of Oregon for Multnomah county. You are to consider the allegations in this complaint only in determining whether the statements contained therein are inconsistent with plaintiffs' evidence here, and as affecting the credibility of plaintiffs' evidence".

The Union Lumber Company, Ltd., also introduced in evidence the contract between it and the LaDee Logging Company. In referring to the LaDee Logging Company the federal judge instructed the jury as follows:

"LaDee Logging Company was an independent contractor, and the defendant can not be held for its negligence, if any, in conducting its logging operations. As an example, the defendant would not be liable for the negligence of the logging company in handling its locomotives or cars while engaged in logging, or in the falling of trees, or in the hauling of logs, or in doing any other thing in connection with its logging operations. If there was an agency between the defendant and the logging company, it was a special agency, and had relation only to the fighting and prevention of fires, as I have instructed you. * * *

"If the relation of principal and special agent existed between the Union Lumber Company and the LaDee Logging Company under the instructions I have given you, and if the defendant and its special agent jointly committed the negligent acts set forth in the amended complaint here, the plaintiffs would have a joint and several action against these companies, but they would be entitled to one recovery only".

In denying the motion for a new trial, Judge McNary stated as follows regarding the relationship existing between the Union Lumber Company, Ltd., and LaDee Logging Company:

"The LaDee Logging Company was an independent contractor, as by its agreement with the defendant it had the right to hire and discharge employes, and the privilege of determining the manner in which the work was to be done. In fact, the defendant was interested only in the final results.

"Under such an agreement, the contractor alone is answerable for injuries happening to third parties in the prosecution of the work".

Both actions (state court and federal court) were based upon two theories: the violation of a statutory duty, and common-law negligence. This was recognized by the federal judge who so instructed the jury, and by the circuit judge in his written opinion.

Section 42-421, Oregon Code 1930, sets forth the statutory duty of both the Union Lumber Company, Ltd., owner of the land, defendant in the federal court case, and the LaDee Logging Company, defendant in this case, in the following language:

"Every one (by which is meant every person, firm or corporation) engaged in logging or wood cutting, or permitting logging or wood cutting upon his lands, in this state, thereby creating a fire hazard, shall, unless relieved by the state forester, each year remove such hazard by burning his annual slashing, by which is meant the tops and inflammable refuse left after logging or wood cutting, that may carry fire or cause it to spread, at such time and in such manner and with such provisions of help as shall afford all necessary precaution against the spread of fire to other property. Any and all such burning during the closed season shall be done in accordance with the provisions of section 9 of this act".

In charging the jury in the federal court case relative to the statutory duties of the defendant in that case, Judge McNary said:

"The complaint charges the defendant with a violation of certain statutory duties as follows:

" 'Defendant allowed, suffered and permitted on its said forest and timber lands in the county of Clackamas and state of Oregon, and in township four (4) south of ranges five (5) and six (6) east of Willamette Meridian, slashing, brush, debris and inflammable materials to accumulate on its said land and remain thereon a constant fire menace and danger without protection and removal in September, 1929' ".

All or practically all of the other allegations in that case concerning defendant's negligence, with the exception of the allegation as to setting fires, were characterized by the federal court in its instructions to the jury as relating to common-law negligence.

■ The duty imposed by the statute is mandatory on both the owner, the Union Lumber Company, Ltd., and the logger, the LaDee Logging Company. The Union company, having permitted the LaDee company to log its lands, could not have escaped liability for failure to obey the mandate of the statute, regardless of whether the LaDee company was its agent or an independent contractor, and regardless of whether or not the condition existing on the land, and prohibited by statute, was brought about by or resulted from the acts of the logging company.

■ Since the plaintiffs have litigated, or could have litigated in the federal court case against the Union Lumber Company, Ltd., all questions involving the breach of a duty imposed by statute upon both the owner of the land and the company engaged in logging it, ought they again to be permitted to litigate the same questions in this case? We think not.

According to the evidence, the LaDee company undertook, at the request of the Union company, the defense in the federal court case. It procured the witnesses, paid them their fees and paid the expenses connected with the defense of the case, with the possible exception of the fees of the attorneys representing the Union company. Had judgment been rendered against the defendant in that case based upon the breach of any duty imposed by statute upon the logging company, the latter company under its contract with the owner of the timber land would have been obligated to pay the same.

The bar to further litigation as to this aspect of the case is based more upon the ground of estoppel because of public policy than upon the doctrine of *res judicata*.

In the case of *McNamara v. Chapman*, 81 N. H. 169 (123 Atl. 229, 31 A. L. R. 188), the question arose as to the right to maintain an action against an employee who had caused the accident by his negligent operation of an automobile, after a judgment had been recovered by the identical plaintiff against the employer for the same accident. At the time the question arose the judgment remained unsatisfied. In referring to the fact that the judgment against the employer was a bar to the action instituted against the employee, the court said:

"The leading case on the subject is Emery v. Fowler, 39 Me. 326, 63 Am. Dec. 627. It holds that a judgment in favor of the employer is conclusive in a subsequent suit against the servant. While it is possible to distinguish it upon the ground that it involved suits for trespass to real estate, it has generally been treated as authority in cases involving other classes of torts. Freeman, Judgm. § 179; Black, Judgm. § 579. Attempts have been made to sustain these and other decisions upon grounds of privity and estoppel, but they do not satisfy the generally accepted tests. Lamberton v. Dinsmore, 75 N. H. 574, 78 Atl. 620.

"The underlying reason which has moved the courts in these matters is nowhere better stated than in Atkinson v. White, 60 Me. 396, 397. 'That the question involved in each suit is precisely the same, and to be proved by the same testimony, is beyond a doubt. It is equally clear that the plaintiff is the same, and that he has had his day in court. He has had a full hearing upon the law and fact involved in the very question he now proposes to try again in another suit. He has had every privilege the law allows him, unless he is

entitled to another hearing simply because he is now attempting to enforce his claim against another defendant in name, indeed, but the same in interest' ''.

The case of *Brown v. Wabash Railway Company,* 222 Mo. App. 518 (.281 S. W. 84), was an action for damages against the initial railroad carrier. Prior to the institution of that case the same plaintiffs had prosecuted an action for the same damages against a connecting carrier, which resulted in a judgment in favor of the defendant, and this judgment was pleaded as a bar to the maintenance of the second action. The federal statute provided that either the initial or the connecting carrier might be sued. The court, holding that the judgment in favor of the connecting carrier was a bar to the maintenance of the second action, said:

''Plaintiffs elected to sue the connecting carrier for damages caused by it, which they had a perfect right to do. Plaintiffs insist that there was no privity between the two railroad companies, and therefore the former judgment is not a bar to that part of the present cause of action seeking to recover damages done by the connecting carrier, the Illinois Central Railway Company. There may not have been privity between the two carriers within the strict technical meaning of that term, and, while the general rule is that a judgment is conclusive only as between the .parties to an action and their privies, there are exceptions to the rule. In Taylor v. Sartorious, 108 S. W. 1089, 1094, 130 Mo. App. 23, 40, the court said:

'' 'The question of who is concluded by a judgment has been obscured by the use of the words ''privity'' and ''privies,'' which in their precise technical meaning in law, are scarcely determinative always of who is and who is not bound by a judgment. Courts have striven sometimes to give effect to the general doctrine that a judgment is only binding between parties and privies, by extending the signification of the word

"privies" to include relationships not originally embraced in it; whereas the true reason for holding the issue *res judicata,* does not necessarily depend on privity, but on the policy of law to end litigation by preventing a party who has had one fair trial of a question of fact, from again drawing it into controversy'. * * *

"The Illinois Central Railway would not be able to set up the judgment in its favor in the suit by plaintiffs as a bar to the right of the Wabash Railway to recover against it, if the Wabash Railway had no notice of the former suit, and no opportunity to defend it. It is quite apparent that, in so far as the damage done on the line of the Illinois Central Railway is concerned, the question involved in the two suits is precisely the same; the plaintiffs, of course, are the same. They have had a full hearing upon the law and facts involved and the very question that they now propose to try again in another suit, and we think they ought to be barred under the maxim of *interest rei publicae ut sit finis litium''*.

In the case of *Bailey v. Sundberg,* 49 Fed. 583, the question arose as to whether or not a dismissal on the merits of a libel *in rem* for a collision rendered the question *res judicata* as against a subsequent libel *in personam* against the master of the boat. In the libel *in rem,* the master, although not a formal party, took an active part in the defense. The court, after discussing the general rule that there can not be an estoppel which is not mutual, said:

"He was the agent of the owner of the steamship in the alleged trespass which was the cause of action asserted by the owners of the schooner; and the decree necessarily determined that he, as well as his principal, was innocent of the imputed wrong. Upon principle, all those who have litigated that question ought to be precluded, as against one another, from litigating it again. 'Justice requires that every cause be once

fairly and impartially tried; but the public tranquillity demands that, having been once so tried, all litigation of that question, between those parties, should be closed forever.' 1 Greenl. Ev. § 522. The owners of the schooner, having chosen to test their right against the principal, and having had their day in court, ought to be precluded from testing it again on the same issue against the agent. Emma Silver Mining Co. v. Emma Silver Mining Co., 7 Fed. Rep. 401. It was held in Emery v. Fowler, 39 Me. 326, in a carefully considered opinion by the supreme court, that a party is not permitted to bring an action against a principal for an alleged trespass, and, after failing upon the merits, to subsequently bring one against the servant who acted by the order of the principal, and rely upon the same acts as a trespass. The court said:

" 'In such cases the technical rule that a judgment can only be admitted between the parties to the record, or to their privies, expands so as to admit it when the same question has been decided and judgment rendered between parties responsible for the acts of others' ''.

In 34 C. J., at page 977, is the following statement:

"One who assists in the prosecution or defense of an action in aid of some interest of his own, and who does this openly to the knowledge of the adverse party, is as fully entitled to avail himself of the judgment as an estoppel as he would be if he had been a party to the record''.

The LaDee company in the federal court case not only undertook the defense but did so openly and to the knowledge of the plaintiffs.

Freeman on Judgments (5th Ed.), § 432, says:

"Persons though not nominal parties may, by active and open participation therein, so connect themselves with litigation in which they are interested that the result is *res judicata* for or against them. Thus

whenever one has an interest in the prosecution or defense of an action, and he, in the advancement or protection of such interest, openly takes substantial control of such prosecution or defense, the judgment, when recovered therein, is conclusive for and against him to the same extent as if he were the nominal as well as the real party to the action''.

The same principle is also recognized in the case of *Souffront v. La Compagnie des Sucreries,* 217 U. S. 475, 487 (30 S. Ct. 608, 54 L. Ed. 846), where it is thus stated:

''The case is within the principle that one who prosecutes or defends a suit in the name of another to establish and protect his own right, or who assists in the prosecution or defense of an action in aid of some interest of his own, and who does this openly to the knowledge of the opposing party, is as much bound by the judgment and as fully entitled to avail himself of it as an estoppel against an adverse party, as he would be if he had been a party to the record. Lovejoy v. Murray, 3 Wall. 1''.

Courts, in considering the right of a defendant not a party to an action to urge the judgment therein as a bar to a similar action brought against him by the same plaintiff, seem to place particular stress on whether or not the person sued could, as a matter of right, have appeared and made a defense in the former action. This matter is referred to in the case of *Bigelow v. Old Dominion Copper Co.,* 225 U. S. 111 (32 S. Ct. 641, 56 L. Ed. 1009, Ann. Cas. 1913E, 875), involving the right of a defendant to plead as a bar a judgment rendered in another court in favor of a joint tort-feasor, in the following language:

''Bigelow could not have appeared as of right and made a defense to that suit. No judgment can be regarded as *res judicata* as to any matter where the

rights in the subject matter arise out of mutuality, and not by succession, unless the party could, as a matter of right, appear and defend, even though he may have had knowledge of the suit. Otherwise, he might be bound by a judgment as to which he had never had the opportunity to be heard, which is opposed to the first principles of justice''.

In referring to the justice of the doctrine of *res judicata,* the Supreme Court of the United States in the case of *Hart Steel Company v. Railroad Supply Company,* 244 U. S. 294 (37 S. Ct. 506, 61 L. Ed. 1148), made the following observation:

''This doctrine of *res judicata* is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, 'of public policy and of private peace,' which should be cordially regarded and enforced by the courts to the end that rights once established by the final judgment of a court of competent jurisdiction shall be recognized by those who are bound by it in every way, wherever the judgment is entitled to respect. Kessler v. Eldred, 206 U. S. 285''.

Since the plaintiffs herein have had their day in court so far as the issues involved herein pertaining to the statutory duty of both the defendant in the federal court case, the Union Lumber Company, Ltd., and the defendant herein are concerned, public policy demands that they be not permitted to litigate these issues a second time, and so far as these issues are concerned the plaintiffs are estopped from again litigating them. The plaintiffs have once had a full and fair trial as to these matters, unaffected by the relationship existing between the owner of the land and the logging company.

In so far as the complaint may contain charges of violation of a common-law duty imposed upon the

owner of the land, regardless of who is occupying or using the same, to exercise reasonable care and diligence to prevent the spread and escape of fires which break out thereon, the same rule of law applies as in the case of the violation of a statutory duty.

■ Another question, however, is involved. The complaint charges common-law negligence on the part of the defendant, which could not be the basis of an action against the Union Lumber Company, Ltd., except on the theory that the logging company was its agent or representative. Had the defendant in the federal court case admitted that the LaDee Logging Company in its logging operations and occupancy of the land was the agent of the Union company, and that the Union company was chargeable with the negligent acts of the logging company, our decision relating to these charges of common-law negligence would not differ from our conclusions already announced with reference to the violation of the duty imposed on both the owner and the logging company by statute.

Reference has already been made to the fact that the contract between the owner of the land and the logging company provided that the logging company should not "be deemed to be the agent or representative of the owner in the conduct" of operations under the contract, and that when the LaDee Logging Company was notified in writing by the Union company to take charge of the defense in the federal court case the attention of the LaDee company was directed to the provision of the contract that it should "not be deemed to be the agent or representative of Union Lumber Company, Ltd." Consideration has also been given to the fact that the complaint in the state court case was introduced by the defense in the federal court case.

In its answer to the complaint filed against it in the federal court the Union Lumber Company, Ltd., denied that the LaDee Logging Company was its agent and alleged that the logging company was an independent contractor. It also alleged "that no agent or representative of this defendant was present upon the property described in the complaint or upon any of the property of the defendant in township 4 south of range 5 east of the Willamette Meridian at the time when the said fire started", although it freely admitted during the trial that the LaDee company was present on the property at the time the fire started.

This defendant's alleged negligent acts as an independent contractor, based on common-law negligence, in so far as they consist of acts for which the Union company could not have been liable, were not an issue in the federal court case, and plaintiffs are entitled to a fair and full hearing on the merits as to these allegations. To deny them this right would be to deprive them of the constitutional guaranty that "every man shall have remedy by due course of law for injury done him in his person, property or reputation".

The insistence of counsel in charge of the defense in the federal court during the entire trial of that case that the LaDee Logging Company was an independent contractor and that the Union Lumber Company, Ltd., was not responsible for its negligent acts was for a definite purpose: i. e., to relieve the Union Lumber Company, Ltd., of responsibility for the damage, if any, caused solely by the logging company. The introduction in evidence, in the federal court case, of the complaint in this case was without question for the purpose of showing that the plaintiffs in the fed-

eral court case had also brought an action against the LaDee company, claiming that the negligence of the logging company had caused the damage for which they were then suing the Union company in the federal court. If counsel for the defendant in this action had charge of the defense in the federal court case, as they now contend, it must have been at their suggestion or at least with their knowledge and acquiescence that these contentions were made, and they should not at this time be heard to say that they were not successful in creating the impression which they sought to convey, or that their contention that the LaDee Logging Company was an independent contractor was ineffective.

The judgment in the federal court case is not *res judicata* as to the issues relating to the common-law negligence of this defendant, for which the Union Lumber Company, Ltd., was not answerable, nor is there any valid reason for holding that that judgment is a bar, on grounds of public policy, so far as this feature of the case is concerned. Therefore, the lower court erred in holding that the judgment in the federal court case was a bar to the maintenance of this action as to this feature of the case.

■ One other question is raised on this appeal by the appellants, to wit: that after Judge Ekwall had sustained the motion to strike defendant's supplemental answer setting forth the judgment in the federal court as a bar to the maintenance of this action, the same question could not again be raised by the defendant in the lower court by filing an amended supplemental answer. But the only objection which seems to have been made to the filing of this pleading was contained in a document filed by the plaintiffs and designated, "Objections and Reply to Amended Supplemental

Answer'', wherein it was alleged that this amended pleading was "contrary to and against the permission" given by the judge in chambers. No ruling of the lower court relative to the filing of this amended supplemental answer is assigned as error. Moreover, a stipulation was entered into between the parties, reading as follows:

"It is hereby stipulated, by and between the parties hereto, that in view of the fact that there is tendered an issue of fact and law raised by the affirmative defense of former adjudication in the federal court and it is the desire of all parties to submit this question of fact and law to the court in the first instance and have that issue submitted and terminated by findings of fact by the court preliminary to the submission of other questions of fact to the jury, and it appearing that by so doing much record may be eliminated and in case a review is had less printing will be found necessary, the court is to hear such evidence as the defendant may produce upon the question of former adjudication and in that respect the record of the federal court may be used and such evidence, oral or written, as may be necessary to establish the relation of the defendant LaDee Logging Company to the action in the federal court and the record upon which reliance is had for a former adjudication, and such findings of the court shall be considered and be given the same effect as if the questions were heard and the court's order made upon the trial of the cause.

"And it is further stipulated and agreed that the record so made at this preliminary hearing upon the one issue of former adjudication may be utilized in a court of review without the necessity of printing".

This assignment of error is therefore without merit.

For the reasons stated, the judgment of the circuit court is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

RAND, C. J., BEAN and CAMPBELL, JJ., concur.

Rehearing denied and former opinion amplified April 11, 1933

### FORMER OPINION AMPLIFIED
#### (20 P. (2d) 1086)

BAILEY, J. In our former opinion in this case we said:

"Since the plaintiffs herein have had their day in court so far as the issues involved herein pertaining to the statutory duty of both the defendant in the federal court case, the Union Lumber Company, Ltd., and the defendant herein are concerned, public policy demands that they be not permitted to litigate these issues a second time, and so far as these issues are concerned the plaintiffs are estopped from again litigating them. The plaintiffs have once had a full and fair trial as to these matters, unaffected by the relationship existing between the owner of the land and the logging company.

"In so far as the complaint may contain charges of violation of a common-law duty imposed upon the owner of the land, regardless of who is occupying or using the same, to exercise reasonable care and diligence to prevent the spread and escape of fires which break out thereon, the same rule of law applies as in the case of the violation of a statutory duty".

After the petition of the respondent, LaDee Logging Company, for a rehearing was denied that company filed a motion embodying the following request:

"In order that the parties and the trial court may follow and may correctly apply the decision of this court in the trial of the action, respondent respectfully moves the court to modify or to supplement its judgment and opinion herein so that the same shall specify: (1) What charges of negligence alleged in the complaint herein are barred because relating to breaches of duty imposed either by statute or common law upon both the owner of the land and respondent as the party in possession; and (2) what charges of negligence alleged in the complaint are not barred because relating to breaches of duty imposed only upon respondent as an independent contractor".

In order to determine whether or not the former opinion should be amplified in the respect pointed out, the appellants were requested to and did file a brief relating to the matters covered by said motion.

■ In the amended complaint in the federal court case it is alleged that the Union Lumber Company, Ltd., defendant in that action, was the owner of timber and forest lands in townships Four and Five south of ranges Five and Six east of Willamette Meridian, whereas in this action it is alleged that the defendant herein was operating ''in township Four south of ranges Five and Six east of the Willamette Meridian, and adjacent thereto, as loggers''. It further appears from the contention made by the plaintiffs in this action that the defendant herein was at the time the fire occurred operating on lands other than those owned by the Union Lumber Company, Ltd. It also appears from the allegations in the case at bar that the defendant herein did not ''keep clean and remove from the operated logging railroad right-of-way accumulations of inflammable material, and also tinder, refuse and extra dried vegetation likely to be the cause of or become set on fire''.

In the federal court case the attorney for the defendant therein, who is also attorney for the defendant in this case, said:

''I am not sure, gentlemen, whether or not I make clear to you and to the court the fact that the logging railroad, at the place where the fire broke out, was the railroad of the LaDee Logging Company, and not the railroad of the defendant, the Union Lumber Company''.

Any right of action which the plaintiffs had, prior to the judgment in the federal court, against the de-

fendant herein due to the negligent acts of the said defendant on lands not owned by the Union Lumber Company, Ltd., would not be barred by said judgment.

■ Section 42-406, Oregon Code 1930, is to the effect that any and all inadequately protected forest land covered wholly or in part by inflammable debris or otherwise likely to further the spread of fire, which by reason of its situation or condition or lack of protection endangers life or property, is declared to be a public nuisance. Section 42-601 provides:

"Every owner of timber land in the state of Oregon shall furnish or provide therefor, during the season of the year when there is danger of forest fires, adequate protection against the starting or spread of fire thereon or therefrom which shall meet with the approval of the state board of forestry".

The following section, 42-602, provides that in case the owner shall fail or neglect to provide the protection required by the section quoted, the state forester shall provide the same and tax the cost thereof to the owner.

According to the answer of the Union Lumber Company, Ltd., in the federal court case, the Oregon state board of forestry had for the year 1929 and for five years prior thereto assessed the timber land referred to in that case belonging to said company, for fire patrol, and such assessments had been paid. Therefore, no liability would attach to the Union Lumber Company, Ltd., by virtue of section 42-406, Oregon Code 1930, as such lands were, within the meaning of the statute, adequately protected. It cannot be said, however, that compliance with this section by the owner would warrant an independent logging company to conduct its logging operations in a negligent or careless manner, regardless of fire hazards.

█ Section 42-421, Oregon Code 1930, provides that:

"Every one (by which is meant every person, firm or corporation) engaged in logging or wood cutting, or permitting logging or wood cutting upon his lands in this state, thereby creating a fire hazard, shall, unless relieved by the state forester, each year remove such hazard by burning his annual slashing, by which is meant the tops and inflammable refuse left after logging or wood cutting, that may carry fire or cause it to be spread, at such time and in such manner and with such provisions of help as shall afford all necessary precaution against the spread of fire to other property".

Under the provisions of the section last quoted it became the duty of both the Union Lumber Company, Ltd., and the defendant herein to burn the annual slashings caused by operations of the LaDee Logging Company on the Union Lumber Company's property. If these annual slashings were not burned, and the failure to burn the same was the proximate cause of the damage to plaintiffs' property, then under the holding in our former opinion the judgment in the federal court case in favor of the Union Lumber Company, Ltd., is a bar to the maintenance of this action in so far as the present action is based upon the failure of the defendant and the Union Lumber Company, Ltd., to comply with the law relative to the burning of the annual slashing. If the slashing was burned annually according to law, then the Union Lumber Company, Ltd., under the section last above quoted, would not necessarily be liable for the accumulation of slashing due to the operations of the defendant company. Section 42-421 does not provide that it shall be the duty of the owner, at all times, to keep his property free from slashings; otherwise it would not have referred

to the removal of the annual slashing. Section 42-409 provides that the period between May 15 and October 1 shall be designated as the closed season and it shall be unlawful during that time for any one to set on fire or cause to be set on fire any forest land without first securing a written or printed permit from the state forester.

■ The defendant is charged with negligence in failing to "keep clean and remove from its operated logging railroad right-of-way accumulations of inflammable material, and also tinder, refuse and extra dried vegetation likely to be the cause of or to become set on fire", and in allowing "the same to accumulate on and near the ties and rails of its said railroad so that fire might be communicated thereto". We cannot agree with respondent that under section 42-421 it became the duty of the Union Lumber Company, Ltd., to keep the railroad right-of-way clear of the inflammable material above referred to, except in so far as that material might consist of "tops and inflammable refuse left after logging or wood cutting". Moreover, we do not understand that the plaintiffs are attempting to charge the defendant herein with failure to remove, from the right-of-way owned by the Union Lumber Company, Ltd., the tops and inflammable refuse left after logging or wood cutting. Section 42-423 requires that every "person, firm or corporation operating a railroad of any kind in this state" shall "annually or oftener, if so directed by the forester, and in a manner and to an extent directed by said forester, destroy or remove all inflammable material from the right-of-way of said railroad". The requirement of this section is much broader than that of section 42-421, and the statutory duty of section 42-423

is, with the exception pointed out in reference to section 42-421, imposed upon the individual or firm operating the railroad, and not the owner thereof.

■ Section 42-425, Oregon Code 1930, makes it a felony for any one wilfully and maliciously to set fire to any forest, woods, timber, brush, slashing, cut-over land, or clearing, or any place from which fire may be communicated thereto; and section 42-426 makes it a misdemeanor for any one accidentally to set fire to any forest, woods, etc., and not to extinguish the same or use every possible effort to do so, or to build any fire for lawful purposes or otherwise in or near such forest, woods, etc., and through carelessness or neglect suffer or permit such fire to burn into or through such timber land. These sections apply to the immediate actor rather than to the owner of the land and, according to the complaint in this case, the defendant is charged with certain violations of these sections of the code. The judgment in the federal court case would not be a bar to an action by plaintiffs against the defendant herein based upon the violation of these provisions of the statute.

■ In his charge to the jury in the federal court case Judge McNary correctly said:

"LaDee Logging Company was an independent contractor, and the defendant [Union Lumber Company, Ltd.] can not be held for its negligence, if any, in conducting its logging operations. As an example, the defendant would not be liable for the negligence of the logging company in handling its locomotives or cars while engaged in logging, or in the falling of trees, or in the hauling of logs, or in doing any other thing in connection with its logging operations".

■ The respondent, in the motion before us, directs our attention to section 42-410 and section 42-411, Ore-

gon Code 1930, as imposing certain duties upon the owners of forest lands and infers that by reason thereof these duties are imposed alike upon the owner and the party in possession. Section 42-410 provides that any one who wilfully or negligently allows a fire to escape from his own land or lands of which he is in possession, or any one who accidentally sets any fire upon his own land or the land of another and allows it to escape from his control without extinguishing it or using every possible effort to do so, or who, having knowledge of a fire burning on his own land or lands of which he is in possession or control, fails or neglects to make every possible effort to extinguish the same, regardless of whether or not he is responsible for the starting or existence thereof, shall be deemed guilty of a misdemeanor. As will be noticed by reading this section of the statute, the LaDee Logging Company might be liable thereunder, whereas no liability would attach to the Union Lumber Company, Ltd.

The defendant, LaDee Logging Company, was, according to the contention of the Union Lumber Company, Ltd., in the federal court case, in the active and exclusive possession of the property belonging to the Union Lumber Company, Ltd., and because of its occupancy thereof probably had knowledge of certain fires thereon before the existence of such fires came to the notice of the Union Lumber Company, Ltd. In other words, it can not be said that the duties imposed by section 42-410 are incumbent alike in all instances upon both the owner and the party in possession. It is more than likely that the Union Lumber Company, Ltd., might show that it did not wilfully or negligently allow the fire to escape, because it had no knowledge thereof, while the La Dee Logging Company, being in

possession of the land, might have had knowledge of the fire and wilfully or negligently have allowed it to escape from land in its possession. As said by Judge McNary in the federal court case, "the duty imposed upon the defendant [Union Lumber Company, Ltd.] by law to use reasonable care and diligence in fighting and preventing fires would not arise until the defendant had knowledge of the existence of the fire".

Section 42-411 requires certain things to be done by the owner or the party in possession of forest land immediately upon having knowledge of the existence of a fire upon the land. What we have said regarding the preceding section is, in a large measure, applicable also to this section.

In this action against the party in possession of the land the defendant herein, as pointed out in our former opinion, is attempting to plead the judgment in an action by these same plaintiffs against the owner of the land as *res judicata*. Had it been conceded by the defendant in the federal court case (Union Lumber Company, Ltd.) that the logging company was its agent, and had that case been decided on the theory that the defendant therein was responsible for its own negligence and the negligent acts of the LaDee Logging Company, then the solution of the question now before us would be fairly simple. We have here, however, an instance in which an independent contractor is contending that a judgment in favor of the company with which it had contracted is a bar to the further prosecution of this action. In an instance of this kind it is axiomatic that acts for which the owner could not have been held responsible because committed by the party in possession can not be said to have been adjudicated favorably to the party in possession and adversely to the injured.

It is impossible for us in the state of the record before this court to point out definitely what acts of negligence charged in the complaint were included in and concluded by the federal court case. Any such definitive segregation will depend a great deal upon the testimony which is offered at the trial in the lower court.

RAND, C. J., BEAN and CAMPBELL, JJ., concur.